ABILENE STEAM LAUNDRY CO. v. CAR-
TER. (No. 8935.)*

(Court of Civil Appeals of Texas. Ft. Worth.
Dec. 14, 1918. On Rehearing,
Jan. 25, 1919.)

1. DIVORCE ⬤〰168—VALIDITY OF DECREE—
COLLATERAL ATTACK.

In personal injury action where defendant
filed no plea challenging plaintiff's right to pros-
ecute the action without joinder of her former
husband, a merely collateral attack upon the
divorce decree, without showing what testimony
was offered in the divorce suit to show plaintiff's
residence, will not support an assignment that
the evidence shows that the divorce decree is
null and void, especially since in any event re-
covery for wife's injuries is made her separate
property by Vernon's Ann. Civ. St. Supp. 1918,
art. 4621a.

2. MASTER AND SERVANT ⬤〰276(2)—INJURY
TO SERVANT—EVIDENCE—CAUSE OF INJURY.

In an action by a servant against a master
for injuries caused by an explosion, evidence
held sufficient to support the jury's finding that
the explosion caused plaintiff's injury.

3. MASTER AND SERVANT ⬤〰330(3)—INJURY
TO SERVANT—NEGLIGENCE OF EMPLOYÉ—LI-
ABILITY OF MASTER.

In an action by a servant for injury from
explosion, evidence held sufficient to show that
the employé whose negligence caused the ex-
plosion was acting within the scope of his
employment.

4. TRIAL ⬤〰129—MISCONDUCT OF COUNSEL.

In servant's action for injuries, argument
of plaintiff's counsel that there had been ir-
regular things done in connection with case
as shown by the record, which the speaker would
not be guilty of, for the whole of defendant's
plant, was justified by defendant's witness' tes-
timony on cross-examination in regard to a
statement required of her by the master after
the accident in which she testified her answers
were suggested, though in part contradicted by
her other testimony.

5. MASTER AND SERVANT ⬤〰269—INJURY TO
SERVANT—EXPLOSION.

In an action by a servant for injury from
explosion, the testimony of another servant,
tending to support defendant's theory that plain-
tiff received no shock, for the reason that wit-
ness did not, although closer to the explosion,
was erroneously excluded.

6. APPEAL AND ERROR ⬤〰1058(3)—EXCLUSION
OF EVIDENCE—HARMLESS ERROR.

Erroneous exclusion of testimony of wit-
ness that he felt no shock from an explosion is
harmless, where eleven other witnesses testified
to same effect.

On Rehearing.

7. MASTER AND SERVANT ⬤〰278(14)—KNOWL-
EDGE OF MANAGER—EVIDENCE.

In an action for injuries from the explosion
of a tumbler while being used to dry clothes
cleaned with gasoline, evidence held to sustain

a finding that the manager of the defendant's
laundry who was present daily knew of such
use of the tumbler that exploded, notwith-
standing the contrary testimony of two of de-
fendant's servants.

Appeal from District Court, Taylor Coun-
ty; Joe Burkett, Judge.

Action by Bessie Carter against the Abilene
Steam Laundry Company. Judgment for
plaintiff, and defendant appeals. Affirmed.

Mahaffey & Fulwiler and J. M. Wagstaff,
all of Abilene, for appellant.
Ben L. Cox, of Abilene, for appellee.

DUNKLIN, J. Bessie Carter recovered a
judgment against the Abilene Steam Laun-
dry Company for damages resulting from
alleged personal injuries sustained by her
by reason of an explosion which occurred in
the laundry of the defendant while she was
engaged as its employé, and from that judg-
ment the defendant has prosecuted this ap-
peal.

One of the equipments of the laundry con-
sisted of what is called a "tumbler," which
was constructed of iron, and into which
clothes were placed for the purpose of being
dried after the tumbler was heated. This
tumbler was not ventilated, but it was equip-
ped with a door. On the occasion in con-
troversy, Will Hanks, one of defendant's
employés, after he had cleaned some gar-
ments in an adjoining room by the use of
gasoline, brought them into the main room
of the building, where the tumbler was in-
stalled, and placed them in the tumbler for
the purpose of drying them. He left the door
open for a short time to allow the escape of
gas which might evaporate from the cloth-
ing, and then closed the door. Shortly after
he had done that, the tumbler exploded as a
result of the accumulation of gas therein
from the gasoline left in the garments.

At the time of the explosion, Bessie Car-
ter was working at what was called the
"mangler," which was stationed a short dis-
tance from the tumbler, and in her petition
she alleged that by reason of the explosion
she was seriously injured, and she claimed
damages upon the further allegation that
such injuries were the proximate result of
negligence on the part of Will Hanks in
placing the garments in the tumbler saturat-
ed with gasoline, under the circumstances,
that such negligence of Hanks was legally
chargeable to the defendant as his master,
and that the defendant was liable to plain-
tiff for such damages by reason thereof.

[1] Bessie Carter had been married, but
prior to the accident she had recovered a
judgment of divorce from her husband in
the district court of Taylor county, where
the laundry was located. Upon the trial

---
⬤〰For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes
*Writ of error refused March 19, 1919.

of the case and upon cross-examination of plaintiff, defendant's counsel sought to impeach the validity of the divorce decree by proof that plaintiff had not resided in Taylor county for six months next preceding the filing of the suit for divorce. The purpose of the counsel in so doing was to show that plaintiff's former husband was a necessary party to the suit and that she could not maintain the same without joining him as coplaintiff with her. Upon such cross-examination, plaintiff stated that after her marriage she and her husband made their home in Potter county for a brief period; that she and her husband separated in that county; and that she then removed to Taylor county, where she had formerly lived and where she has ever since resided. According to her testimony, her return to Taylor county was about five months prior to the institution of the suit for divorce and less than six months, the period of residence required by our statutes as a necessary showing to establish a right to a decree of divorce by the district court of Taylor county in which the suit was instituted. But the defendant in the present suit filed no plea challenging the right of plaintiff to prosecute this suit without the joinder of her former husband, the attack upon the decree being merely a collateral attack, and no attempt was made to show just what the testimony was which was offered in the suit for divorce to show that plaintiff had resided in Taylor county for six months next preceding the date of the filing of the suit. Under such circumstances, we think it too clear for argument that there is no merit in the assignment now presented that the evidence showed that the divorce decree was null and void and therefore plaintiff could not maintain the suit without the joinder of her husband as coplaintiff. And it may be added that at all events the recovery is made the separate property of plaintiff by virtue of article 4621a, Vernon's Texas Civil Statutes Supplement 1918.

[2] It is insisted that there is no support in the evidence for the finding by the jury, in answer to special issues, that plaintiff was injured by reason of the explosion; the contention being made that the uncontradicted proof was that the force of the explosion went in a direction other than the position occupied by the plaintiff at the time, and therefore she could not have been injured. According to uncontroverted proof, the force from the explosion was sufficient to break about 81 window panes in the building. Eleven of the employés working in the building at the time, who were at various distances and in various directions from the tumbler, testified that they sustained no injuries from the explosion and did not feel the force of it. One of those witnesses was on a direct line between the plaintiff and the tumbler, but according to her testimony she was in a stooping position removing garments from a basket, while according to the testimony of plaintiff herself she was in a standing position, and, according to all of the proof, the principal force of the explosion was in an upward direction. There was no proof that any one sustained any injuries by reason of the explosion except the plaintiff and Will Hanks. The proof showed that after the explosion plaintiff was carried to her home, and a physician was called to attend her, who testified, in substance, that upon that occasion he found bruises on her neck, the small of her back near the spinal column, and on her hip and on her shoulder. He further testified that there was a swollen spot near the center of her back which covered an area of about 2½ or 3½ inches; that he made several visits to her thereafter, and she suffered from convulsions which could not be controlled except by the use of morphine; that her nervous system was seriously impaired; and that in his opinion those conditions were permanent. The testimony of the physician as to plaintiff's injuries was corroborated by that of other witnesses who attended her in her illness.

According to other testimony introduced, plaintiff was free of such injuries prior to the explosion. Plaintiff testified that she heard the explosion, but she did not remember anything that occurred for some time after the accident.

The proof showed that there was an iron bar immediately in the rear of plaintiff just before the explosion, against which she could have fallen if she had been knocked against it by the force of the explosion, and upon that theory plaintiff sought to sustain the contention that she was injured in that manner, and we, after mature consideration, have reached the conclusion that the evidence was sufficient to support a finding by the jury sustaining that contention, notwithstanding other evidence cited by appellant tending strongly to refute that contention.

[3] We are of the opinion further that the evidence was sufficient to show that, in using the tumbler in the main room of the laundry, Will Hanks was acting within the scope of his employment, and that therefore the rule of respondeat superior would be applicable against the defendant. It is true, as contended in appellant's brief, that the evidence showed without controversy that Hanks had been employed to work in an adjoining room, where he used another tumbler in drying clothes he had cleaned with gasoline, and that the tumbler he there used was perforated in such a manner as to allow the gases which formed from the gasoline to escape. But there was evidence further to show that that tumbler had been out of order, and by reason thereof Hanks, who was still expected to continue in such work, had been using

the tumbler which exploded for drying the clothes which he had cleaned with gasoline, and that such use had been with the knowledge of defendant's manager who was authorized to control his services and who made no objection to such use of the tumbler.

[4] Another assignment is presented to the remarks by counsel for plaintiff, in his closing argument to the jury, to the effect that there had been a lot of irregular things done in connection with the case, as shown by the record, which the speaker would not be guilty of for the whole laundry plant; that, if the speaker could not get a verdict honestly, then he did not want one at all. A bill of exception was taken to the argument, which the trial court refused to withdraw from the jury.

Mary Carter, one of defendant's witnesses, after giving testimony on direct examination of a damaging character to plaintiff's case, further testified on cross-examination that after the explosion she was questioned by a representative of the defendant company concerning the matters which she had already detailed in her testimony, and that after answering those questions she was put back to work. She further testified as follows:

"I guess my job depends on the way I answer those questions; the way I testify in this suit here, I guess my job depends on that."

And on redirect examination by counsel for defendant, she further testified that the representative who so questioned her after the accident wrote down her answers to the questions at the time, and that he made suggestions to the witness as to what she should say in those answers. She further testified, however, that she volunteered all her answers to the questions without any suggestions from the representative who interrogated her. But notwithstanding the apparent contradiction, counsel for plaintiff was warranted in commenting upon that portion of the testimony favorable to his side of the case. We have found no other testimony in the record which would have warranted the argument, and therefore must presume that it had reference to the testimony referred to, which we are unable to say did not warrant the argument.

[5, 6] Complaint is made of the exclusion of the testimony of the witness Ben Lee McDonald, offered by the defendant, to the effect that at the time of the explosion he was working about 25 or 30 feet in a southeasterly direction from the tumbler which exploded, and that he felt no effect of the explosion. This testimony, we think, was clearly admissible as tending to support the defendant's theory that plaintiff sustained no

shock from the explosion; yet such error will not of itself require a reversal of the judgment, in view of the fact, as stated in appellant's brief, that eleven other witnesses working in various directions and at various distances from the tumbler in the same room, testified that they felt no force whatever from the explosion. Under such circumstances, it is not reasonably probable that the testimony of the additional witness Ben Lee McDonald would have influenced the jury to render a finding that plaintiff was not injured by the explosion. See Rule 62a (149 S. W. x); Wells Fargo & Co. v. Benjamin, 165 S. W. 120; and other decisions cited in Harris' Court Rules, pp. 55–58.

For the reasons indicated, all assignments of error are overruled, and the judgment is affirmed.

### On Rehearing.

Appellant earnestly insists that we were in error in concluding that the evidence was sufficient to support the jury's finding to the effect that, prior to the explosion, Hanks had been using the tumbler in question for drying clothes which he had already cleaned with gasoline, with the knowledge of defendant's manager, who had authority to control his services, and who made no objection to such use of the tumbler.

[7] As pointed out in appellee's brief, plaintiff testified, in substance, that the tumbler, in the room where Hanks was regularly employed to clean clothes by using gasoline, had been out of repair for several weeks, during which time Hanks had been using the tumbler which exploded, and during such use Mr. Boone, who was superintendent and manager, "was around in the building off and on all during the day, unless he just stepped out, and he left just before closing time." That testimony, in connection with the testimony of Will Hanks to the effect that the defendant did a great deal of dry cleaning, that he (Hanks) complained to Mr. Boone once or twice about his tumbler being out of order, that Mr. Boone said he would have it fixed but did not do so, and that Mr. Boone had never made any complaint to him about his using the tumbler which exploded, we think was sufficient to sustain the finding referred to, notwithstanding the further testimony of Hanks and Boone that the latter did not know anything about such use of the tumbler in question prior to the accident.

We deem it unnecessary to discuss further other questions presented in the motion for rehearing, as we cannot add anything to what we have already said upon them in our original opinion.

The motion for rehearing is overruled.